UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
SHALANDA M. RYDER,

                               Plaintiff,     18-CV-539-FPG

      v.                                     DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                             Defendant.

## INTRODUCTION

On January 11, 2012, Plaintiff filed an application for supplemental security income ("SSI") alleging disability beginning on February 9, 2009. Tr.[1] at 52, 120.  After the application was denied, Plaintiff timely requested a hearing. Tr. 57-58.  On May 16, 2013, Plaintiff appeared with her attorney and testified before Administrative Law Judge Timothy M. McGuan ("the ALJ"). Tr. 27-51.  A Vocational Expert ("VE"), Timothy Janikowski, also testified at the hearing.  Tr. 45-51.  The ALJ issued an unfavorable decision on June 7, 2013.  Tr. 14-22.  Plaintiff then requested review by the Appeals Council, which the Council denied on January 20, 2015, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-3.  Plaintiff subsequently filed a lawsuit. On December 16, 2015, this Court granted Plaintiff's motion for judgment on the pleadings and remanded back to the Commissioner of Social Security ("the Commissioner") for reconsideration of the administrative record, particularly treatment records from Child and Family Services and the opinion of Plaintiff's Nurse Practitioner Erika Malinowski ("NP Malinowski"). Tr. 437-50.

Following the remand, Plaintiff appeared with her attorney, Nicholas DiVirgilio, Esq., and testified at a new hearing before the ALJ on December 18, 2017. Tr. 398-15. VE Rachel Duchon, also testified at the hearing. Tr. 398.  On February 23, 2018, the ALJ issued an unfavorable

---

[1] "Tr." refers to the administrative record in the matter.  ECF No. 10.

decision. Tr. 383-91. Plaintiff did not request a review by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently brought this action pursuant to Title XVI of the Social Security Act (the "Act") seeking review of the final decision of the Commissioner denying her application for SSI.[2] ECF No. 1.  Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 15, 16.  For the reasons that follow, Plaintiff's motion for judgment on the pleadings is DENIED, the Commissioner's motion is GRANTED, and the Commissioner's decision is AFFIRMED.

## LEGAL STANDARD

### I.      District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012).  Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007).  "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted).  "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).

---

[2] The Court has jurisdiction over this matter under 42 U.S.C. § 405 (g).

## II.     Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b).  If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.*  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual

3

functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I.    The ALJ's Decision

At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 11, 2012. Tr. 385. At step two, the ALJ found that Plaintiff suffered from several severe impairments: psychotic disorder, schizoaffective disorder, and bipolar disorder. *Id.* At step three of the analysis, the ALJ found that the severity of Plaintiff's impairments did not meet or equal the criteria of any Listing. Tr. 386. The ALJ then determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels with several nonexertional limitations. Tr. 387. Specifically, the ALJ found that Plaintiff was able to perform simple, unskilled work, with occasional interaction with the public, but no limitation on interaction with co-workers or supervisors. *Id.* At step four, the ALJ found that Plaintiff was not capable of performing her past relevant work. Tr. 389. The ALJ then proceeded to step five, where he determined that there were jobs in the national economy that a person of Plaintiff's age, education and work experience could perform. Tr. 390. Specifically, the ALJ found that Plaintiff could work as a kitchen helper and cleaner/housekeeper. *Id.*

### II.    Analysis

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ erred in affording little weight to the opinions of her treating providers Betty Morris, LCSW ("LCSW Morris"), Diana Page, NP ("NP Page") and NP Malinowski while assigning great weight to the opinion of consultative examiner Dr. Santarpia. ECF No. 15, at 10-

4

14. Plaintiff further argues that the ALJ erroneously formulated her RFC as it does not provide for any limitation on the Plaintiff's ability to interact with coworkers and supervisors. *Id.* at 14-17. This Court disagrees with both arguments for the following reasons.

It has been well-recognized that an ALJ must defer to an opinion of a claimant's treating physician when making an RFC determination. *Halloran v. Barnhart*, 362 F. 3d 28, 32 (2d Cir. 2004) (internal and other citations omitted). The opinion of the claimant's treating physician is given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal citations omitted). If the ALJ determines that the opinion of a treating physician is not entitled to controlling weight, he must decide how much weight, if any, to give it. In doing so, the ALJ must explicitly consider what is known as "*Burgess* factors," which include "(1) the frequency, length, nature, and extent of Plaintiff's treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (internal citations omitted); *see also* 20 C.F.R. §416.927 (c).[3]

When an opinion is not submitted by an acceptable medical source, the ALJ may use the same factors when considering it in his RFC analysis. *See* SSR 06-03p, 2006 WL 2329939, at *4-6 (Aug. 6, 2006). The regulations, as they stood prior to March 27, 2017, establish that opinions from medical sources such as nurse practitioners, although not technically deemed "acceptable medical sources" under the rules, require an ALJ to consider them under the same factors used for

---

[3] Changes to 20 C.F.R. § 416.927 regarding the consideration of opinion evidence eliminated the application of the "treating physician rule" for claims filed on or after March 27, 2017. For purposes of this appeal, the prior version of the regulation applies.

consideration of opinion of "acceptable medical sources" and "explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  20 C.F.R. § 416.927(f).

Here, the ALJ considered opinions of Plaintiff's treating mental health providers – LCSW Morris, NP Malinowski, and NP Page – all of whom were not acceptable medical sources, and did exactly what he was required to do by the regulations. He analyzed their findings and treatment records, and assigned their opinions "little weight" because they were either in a form of a checklist, did not contain specific findings of record, and were inconsistent with their own corresponding treatment records or the other evidence, which demonstrated Plaintiff's essentially normal mental status evaluations, positive response to medication, or her frequent noncompliance with treatment. Tr. 388-89.   The Court does not find an error in the ALJ's affording less weight to opinions of NP Malinowski and NP Page because they were in the form of a checklist and did not contain any additional elaboration of their specific findings that supported the limitations they identified. *See Woodworth v. Berryhill*, No. 6:17-CV-06216 (MAT), 2018 WL 1989973, at *4 (W.D.N.Y. Apr. 27, 2018) ("[l]ack of supporting detail and/or objective findings provides a . . . reason for affording [an] opinion less weight.") (internal citations omitted).  Both opinions listed Plaintiff as moderately limited to very limited in her ability to maintain concentration, understand and carry out instructions, make simple decisions, interact appropriately with others, and maintain socially appropriate behavior, yet the only rationale each opinion offered was a one-sentence explanation stating that Plaintiff was distracted because of auditory hallucinations. Tr. 275, 295, 298. *See Klodzinski v. Astrue*, 274 F. App'x 72, 73 (2d Cir. 2008) (though a medical opinion of

a treating physician indicated that it was based on the medical findings, the opinion was found to be marginally useful and not supported by clinical findings when it was provided in a check box form and contained very few details about the severity of plaintiff's conditions).

Additionally, treatment notes of NP Malinowski and NP Page, as well as the other evidence of the record, do not support the level of limitation identified in their opinions. Similarly, the record does not provide ample support for the opinion of LCSW Morris, who determined that Plaintiff was unable to work because she could not concentrate due to hearing voices. Tr. 281, 283. Even though the record undeniably contains evidence of Plaintiff's reported difficulties concentrating, being depressed, distracted, irritable, and feeling anxious due to having auditory hallucinations, it also includes evidence of Plaintiff's reports of her symptoms being under control, her effective response to medications, and of the improvement of her overall condition to the point where she could not identify areas of stress in her life. Tr. 261, 281, 283, 359-62, 370-74; *see, e.g., Matta v. Astrue*, 508 F. App'x 53, 57 (2d Cir. 2013) (treatment notes showing plaintiff being stable and responsive treatment supported the ALJ's conclusion that despite suffering from a bipolar disorder, plaintiff could perform work on a regular and continuing basis); *Claypool v. Berryhill*, 16-CV-6195-CJS, 2018 WL 3386337, at *3 (W.D.N.Y. July 12, 2018) (a physician's medical opinion was properly rejected by the ALJ when the physician's treatment records showed a steady improvement and reduction of therapy sessions); *Scott v. Colvin*, No. 13-CV-6277 (MAT), 2014 WL 2818668, at *7 (W.D.N.Y. June 23, 2014) (RFC was supported by substantial evidence when the record contained evidence which showed that despite mild to moderate limitations, plaintiff's mental health treatment was conservative, and managed with medication and treatment).

Here, during examination, Plaintiff often appeared psychiatrically stable, oriented, with euthymic affect, normal speech, good attention and concentration, intact memory and orientation,

7

and was able to engage in discussions of her family issues and stressors in her like, and even reported being "at a happy medium" in her life.  Tr. 261, 330, 336, 338, 352, 354-60, 365-71, 603. Even though she often complained of having auditory hallucinations, the record demonstrates that she was able to control them with medications and ignore the voices she heard.  Tr. 332, 355-56, 601.  In fact, Plaintiff told NP Malinowski that she was "able to ignore [her auditory hallucinations] for years."  Tr. 372.  The record also demonstrates that Plaintiff's hallucinations deteriorated only after she stopped taking her medication and was discharged from treatment for failure to continue it, and that her hallucinations quickly improved with continuous treatment.   Tr. 601, 608, 614, 620, 624; *see* 20 C.F.R. § 416.930(a) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled . . ..").  Therefore, "because it is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record where the record provides sufficient evidence for such a resolution . . . even when that evidence is internally inconsistent[,]" it was proper for the ALJ to weight the opinion evidence of Plaintiff's treating mental health therapists and afford them little weight. *Micheli v. Astrue*, 501 F. App'x 26, 29-30 (2d Cir. 2012) (summary order); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (an opinion of a treating physician was properly rejected when the physician's treatment records included that despite her bipolar disorder, Plaintiff's stable mood, euphoric effect, and engagement in social activities).

Notably, the findings of Plaintiff's treating mental health practitioners were also inconsistent with the opinion of the consultative examiner Dr. Santarpia, which opinion the ALJ afforded great weight.  Plaintiff argues that the ALJ erred in forming her RFC based on Dr. Santarpia's opinion because a consultative examiner's opinion is generally should be afforded limited weight. ECF No. 15 at 14.  While it might be true in certain circumstances, the Court does

not find that such circumstances exist here. In fact, it has been recognized that "the opinions of consulting sources 'may constitute substantial evidence if they are consistent with the record as a whole.'" *Houseman v. Colvin*, No. 13-CV-210-JTC, 2015 WL 6442571, at *7 (W.D.N.Y. Oct. 23, 2015) (internal citations omitted). Here, the Court finds that Dr. Santarpia's findings and conclusions regarding Plaintiff's mental limitations were consistent with the record. Specifically, Dr. Santarpia found that during her examination Plaintiff's attention and concentration were intact, she could do simple mathematical calculations and subtractions, appeared cooperative, coherent, goal oriented, with adequate matter of relating and overall presentation, and no evidence of hallucinations, delusions, or paranoia. Tr. 204-05. Even though Plaintiff reported experiencing excessive apprehension, worry, and restlessness, she, nonetheless, did not indicate having any symptoms of depression, anxiety, panics, or thought disorder during the examination by Dr. Santarpia. Tr. 202-03. Instead, Plaintiff told Dr. Santarpia that she had found counseling helpful in teaching her how to manage her emotions better. Tr. 203. Based on Dr. Santarpia's observations and Plaintiff's reports of her symptoms, Dr. Santarpia determined that Plaintiff was able to follow and understand simple directions and instructions, performs simple tasks, maintain attention, concentration, and regular schedule, make appropriate decisions, learn new tasks, and appropriately deal with stress. Tr. 205. The only limitations that Dr. Santarpia found were Plaintiff's ability to perform complex tasks independently and relate adequately with others, which she determined to be mild and caused by Plaintiff's lack of motivation. *Id*. Dr. Santarpia's conclusions were not only consistent with treatment notes of Plaintiff's treating providers showing Plaintiff's often stable mental health visits and symptoms that were controlled by medication, but also with Plaintiff's activities of daily living, which demonstrate that even though Plaintiff was suffering from psychiatric problems, they were not as disabling to interfere with her ability to

function in a work setting as she portrayed them.   Because "[a] consultative physician's opinion may serve as substantial evidence in support of an ALJ's decision," *Sloan v. Colvin*, 24 F. Supp. 3d 315, 326 (W.D.N.Y. 2014), the ALJ properly afforded great weight to Dr. Santarpia's opinion and relied on it to determine that Plaintiff was able to perform a full range of work at all exertional levels with occasional interaction with the public. Tr. 387. *See Sherrill B. v. Comm'r of Soc. Sec.*, 5:17-CV-754 (ATB), 2018 WL 4150881, at *9 (N.D.N.Y. Aug. 30, 2018) ("Because the ALJ considered the objective medical evidence, Plaintiff's daily activities and the hearing testimony in determining that Plaintiff's diagnosed depression and anxiety did not impose any limitations on her RFC, the ALJ's determination was supported by substantial evidence."); *see also Hudson v. Colvin*, No. 5:12-44, 2013 WL 1500199, at *11 (N.D.N.Y. Mar. 21, 2013) (finding no legal error where an ALJ rejected the opinion of a treating social worker because it conflicted with the opinion of consultative examiners).

Plaintiff takes issue with the only exertional limitation identified by the ALJ, arguing that, in addition to restricting her interaction with the public, the ALJ should have placed limitations on her interaction with coworkers and supervisors. ECF No. 15-1, at 14-17. She submits that when formulating this restriction, the ALJ erred in interpreting Dr. Santarpia's and non-examining, consultative psychiatrist Dr. H. Tzetzo's ("Dr. Tzetzo") opinions, as well as the opinions of Plaintiff's mental health treating providers, all of whom found Plaintiff to be mildly or moderately limited in her ability to adequately relate with others and maintain socially appropriate behavior. *Id.* The Court disagrees.

It has been well-recognized that the ALJ's conclusions need not perfectly correspond with any of the opinions of medical sources relied on by the ALJ as he is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta*,

508 F. App'x at 56 (internal quotations and citations omitted). Where an ALJ's Step Four analysis "affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous" remand is not necessary. *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).

Here, the ALJ's limitation that Plaintiff could have occasional interaction with the public and unlimited interaction with supervisors and coworkers was supported by the record. Specifically, Dr. Santarpia opined that Plaintiff was mildly limited in relating to others. Tr. 205. Dr. Tzetzo, a non-examining review physician, opined that Plaintiff was moderately limited in her ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, but was not significantly limited in her ability to get along with coworkers or peers, or in her ability to ask questions or request assistance. Tr. 222. Because "a limitation to only 'occasional' or 'limited' contact with others has been found sufficient to account for moderate limitations in social functioning[,]" the ALJ did not err in limiting Plaintiff's interaction with the general public. *Reilly v. Colvin*, No. 1:13-CV-00785 (MAT), 2015 WL 6674955, at *3 (W.D.N.Y. Nov. 2, 2015) (collective cases). Also, because the RFC "may not perfectly correspond" with any of the medical opinions, it was appropriate for the ALJ not to limit Plaintiff's interaction with coworkers or supervisors based on his review of the entire record that supports Plaintiff's ability to interact with others, particularly those she knew or had prior contact with. In fact, Plaintiff's interactions with Dr. Santarpia and treating providers were friendly and cooperative, with adequate manner of relating and overall presentation. Tr. 204, 261, 330, 336, 338, 373, 651. She engaged in social activities such as attending church every week, socializing with friends and family, planning and organizing for holidays, going to the zoo with her daughter, and visiting her son at his college in New York City. Tr. 37-38, 150, 356, 371. Plaintiff also cared

11

for her minor daughter, used public transportation, and went grocery shopping early in the morning to avoid large crowds.  Tr. 37.

Plaintiff's argument also lacks merit because "moderate limitations in social interaction and other areas of work-related functioning nonetheless permit the performance of unskilled work, such that a limitation to unskilled work is generally sufficient to accommodate those limitations." *Wightman v. Comm'r of Soc. Sec.*, 18-CV-6295L, 2019 WL 2610712, at *2 (W.D.N.Y. June 26, 2019) (no error for the ALJ to permit Plaintiff's frequent contact with supervisors, coworkers and the public when Plaintiff had moderate limitation in social interaction).  Because the ALJ determined, based on the VE testimony, that Plaintiff was able to perform the unskilled work of kitchen helper and cleaner/housekeeper, the ALJ's only social limitation of Plaintiff's interaction with the public was not erroneous.  Therefore, for the above reasons, the Court finds that the ALJ's RFC assessment is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 15) is DENIED, the Commissioner's motion for judgment on the pleadings (ECF No. 16) is GRANTED.  The Commissioner's decision is AFFIRMED, and Plaintiff's complaint is DISMISSED.  The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: September 7 , 2020
       Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court